UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTORIA V. FRANKLIN,

Plaintiff,

v.

PEPCO HOLDINGS, INC. (PHI),

Defendant.

Civil Action No. 1:11-cv-02029 (JDB)

**MEMORANDUM OPINION**

Plaintiff Victoria Franklin brings this action against defendant Pepco Holdings International ("Pepco"), her former employer, for a violation of her rights under the Americans with Disabilities Act ("ADA"), the District of Columbia Human Rights Act ("DCHRA"), the Family and Medical Leave Act ("FMLA"), and the District of Columbia Family and Medical Leave Act ("DCFMLA"), as well as for defamation. Specifically, Franklin alleges that Pepco created a hostile working environment and failed to provide reasonable accommodations for her disability; that Pepco retaliated against her, including wrongfully terminating her, for her filing for and use of allotted FMLA leave; and that Pepco defamed her. Pepco has moved to dismiss these claims on the grounds that Franklin has not exhausted administrative remedies, has asserted claims that are time-barred, and has failed to state a claim upon which relief can be granted. Upon consideration of the parties' various filings, the Court will grant Pepco's motion to dismiss on all but Franklin's FMLA claim.

**I. Background**

Franklin was hired as a legal assistant by Pepco in October 2007. Pl.'s Compl. [Docket

1

Entry 1] ("Compl.") ¶¶ 6, 8.  She suffered from a fibroid condition that could cause severe bleeding if not controlled; therefore, she regularly used her allotted sick leave days to visit the doctor. Compl. ¶ 9.  While at Pepco, Franklin enrolled in a higher education program for which Pepco paid most of the costs; she signed an authorization stating she would have to repay these funds "should [she] terminate [her] employment with [Pepco] within two years" of taking the courses. Id. ¶¶ 10, 40 & Ex. 10.

In May 2008, Franklin's supervisor, Ellen Rogers, began challenging Franklin's use of sick days. Compl. ¶¶ 11-13, 15-18, 20.  In April 2009, Franklin applied for benefits under the FMLA and received intermittent leave for her condition. Compl. ¶¶ 19-20.  Under the FMLA, an employee whose serious health condition prevents her performing her job functions is entitled to twelve work weeks of leave over twelve months. See 29 U.S.C. §§ 2611-12.  The 2009 mid-year review by Rogers and another supervisor criticized Franklin's work performance and number of absences. Compl. ¶ 21 & Ex. 3.  Also, in October 2009, Rogers prepared a calendar of the days of work Franklin had missed, color-coded by cause, which included FMLA leave taken. Compl. ¶¶ 22-23 & Ex. 4.

In January 2010, Franklin was placed on paid short-term disability leave due to "stress," which she alleges was caused by Rogers' behavior. Compl. ¶ 24.  Subsequently, Franklin submitted a notice from her physician "recommend[ing]" that on her return she be placed in a different Pepco department. Compl. ¶ 26 & Ex. 6.  Pepco read this as a statement that Franklin was <u>unable</u> to continue working in Rogers' department, and therefore required her to apply for other positions within the company if she wanted to remain an employee. Compl. ¶¶ 27-28. Franklin was not accepted in another position within the designated time frame, so her employment at Pepco was terminated on July 20, 2010. Compl. ¶¶ 31-33.  Pepco has since

sought to recoup from Franklin the amount it paid for her education. Compl. ¶¶ 38-39, 42-43.

On September 7, 2010, Franklin submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC") citing "[s]tress and fibroids" as the disabilities she believed had caused the adverse action taken against her at Pepco. Pl.'s Resp. in Opp'n to Def.'s Mot. Dismiss [Docket Entry 5] ("Pl.'s Opp'n"), Ex. 1.  In October 2010, she submitted a formal Charge of Discrimination to the EEOC in which she checked off "Retaliation" and "Disability" as causes for discrimination.  Where the form asked for "the particulars" of the discrimination, Franklin wrote:

> On or about January 2010, I was placed on short term disability leave for stress. On or about June 21, 2010, my doctor released me to return to work with a reasonable accommodation for my disability.  On or about June 23, 2001, I received a letter from Karen Gentry-Mays informing me that my employment would be terminated effective July 20, 2010.
> I believe I have been discriminated against based on my disability, and in retaliation for requesting a reasonable accommodation[.]

Def.'s Mot. Dismiss [Docket Entry 4] ("Def.'s MTD"), Ex. A.  The Charge of Discrimination did not mention fibroids. Id.  The EEOC sent Franklin a Notice of Right to Sue on August 31, 2011. Compl. Ex. 12.

## II. Standard of Review

To survive a motion to dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting that the pleading is intended to "give the defendant fair notice of what the…claim is and the ground upon which it rests" (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Twombly,

550 U.S. at 555-56; Aschroft v. Iqbal, 556 U.S. 662, 677-79 (2009) (quoting Twombly, 550 U.S. at 570).  A satisfactory complaint thus includes "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56.

When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  The plaintiff must be granted every favorable inference that can be drawn from the allegations of fact.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The court also does not accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks omitted); see also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

### III. Claims under the ADA

Pepco argues that Franklin cannot bring her claims under the ADA because she failed to exhaust her administrative remedies regarding those claims.[1]  Pepco relies on the fact that Franklin's EEOC Charge of Discrimination listed only stress as her disability, whereas her complaint bases her claim of discrimination on her fibroid condition as well as stress. See Def.'s MTD, Ex. A.  The Court agrees with Pepco that the fibroid claim has not been exhausted, and it

---

[1] Recent cases "favor treating failure to exhaust as a failure to state a claim." Lyles v. District of Columbia, 777 F. Supp. 2d 128, 132 (D.C. Cir. 2011) (quoting Hansen v. Billington, 644 F. Supp. 2d. 97, 102 (D.D.C. 2009) (collecting cases)).

4

also finds that the stress claim is not viable under the ADA.

Before they may sue for violations of the ADA, plaintiffs "must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it." 42 U.S.C. § 12117(a); Ellis v. Georgetown Univ. Hosp., 631 F. Supp. 2d 71, 75 (D.D.C. 2009) (citing Marshall v. Fed. Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997)). In order to respect the EEOC's role and ensure that the charged employer is given notice of the alleged wrongdoing, "a claimant may only challenge in federal district court those allegations that were contained in the EEO complaint or those that are 'like or reasonably related to the allegations of the charge.'" Ellis, 631 F. Supp. 2d at 75 (quoting Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)).

Franklin's EEOC Charge listed only stress as her disability. The single specific instance of discrimination cited therein was her termination, which arose solely out of her stress-related leave. See Def.'s Rep. to Pl.'s Resp. in Opp'n [Docket Entry 6] ("Def.'s Reply") at 2-3 & n.1. Implicitly conceding that the Charge did not put Pepco on notice of her fibroid-related claim, Franklin points instead to her intake questionnaire. That document did reference both stress and fibroids as causing her hardship at work, but Pepco claims that it did not receive a copy of the questionnaire until after this lawsuit commenced, and Franklin makes no allegations to the contrary. Def.'s Reply at 2. Franklin also claims in her brief that the parties engaged in a joint mediation during the EEOC process wherein Pepco was put on notice of her claim that fibroids were an additional disability, but she does not provide any documentation of that claim, nor does her complaint mention any joint mediation session where Pepco would have been put on notice of the fibroids claim. Pl.'s Opp'n at 2. Hence, Franklin cannot rely on either her intake form or the alleged joint mediation as an alternative source of notice to Pepco.

As Franklin did not give Pepco specific notice during the EEOC process that she was claiming to be disabled by fibroids, the next question is whether that claim is "like or reasonably related to the allegations of the [EEOC] charge," namely, that she was disabled by stress. Park, 71 F.3d at 907.  The Court finds that fibroids are not "reasonably related" to stress, such that Pepco could have expected, without further notice, for Franklin to sue on that basis.  First, Franklin does not assert that fibroids caused her stress, or vice versa.  Second, the two conditions are not medically alike: fibroids are a purely physical ailment, whereas stress is not (although it may have physical manifestations).  Third, the time frame for the two conditions is entirely different: Franklin's fibroid condition had existed since before she was hired at Pepco, whereas she asserts that the stress for which she requested disability was caused by events at Pepco. See Ndonji v. Interpark Inc., 768 F. Supp. 2d 264, 277-78 (D.D.C. 2011) (finding that an EEOC charge identifying a single discriminatory incident did not give sufficient notice of intent to sue based on various continuing circumstances such as "transfers to difficult locations, an increased workload, [and] management reprimands").  Because the two conditions are not "reasonably related," Franklin did not exhaust the available administrative remedies for her claim related to disabling fibroids by bringing a stress-related claim before the EEOC. Her current claim of fibroids-related disability must therefore be dismissed.

Franklin did exhaust her claim of discrimination based on her stress disability; that claim, however, cannot be brought under the ADA.  The ADA defines a disability, in relevant part, as "a physical or mental impairment that substantially limits one or more major life activities," such as caring for oneself, performing manual tasks, or communicating. 42 U.S.C. § 12-102(1)(A), (2). A substantially limiting impairment is one that "significantly restricts [the individual's] . . . ability to perform either a class of jobs or a broad range of jobs in various classes as compared to

the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630(j)(3)(I). Hence, allegations of stress caused by the conduct of others at an employee's workplace will generally fail to state a claim for disability under the ADA, because workplace-specific stress does not affect an employee's ability to perform "either a class of jobs or a broad range of jobs in various classes." Id.; see, e.g., Coleman Adebayo v. Leavitt, 326 F. Supp. 2d 132, 141 (D.D.C. 2004) ("An impairment limited to and arising from stress at work does not qualify as a disability.") (citations and alterations omitted)); Weigert v. Georgetown Univ., 120 F. Supp. 2d 1, 16 (D.D.C. 2000) (citing Palmer v. Circuit Court of Cook Cnty., 905 F. Supp. 499, 507 (N.D. Ill. 1995)); Gonzagowski v. Widnall, 115 F.3d 744, 746-47 (10th Cir. 1997); Aldrup v. Caldera, 274 F.3d 282, 287 (5th Cir. 2001). Franklin's stress does not prevent her from working in general; her doctor's note stated that she would be capable of working in a different Pepco department. See Compl. Ex. 6. Therefore, Franklin's stress does not amount to a disability under the ADA, so she cannot pursue a stress-based disability claim in this Court.

### IV. Claims Under District of Columbia Law

Pepco urges the Court to dismiss the third, fourth, and sixth counts of Franklin's complaint on the ground that these claims were brought after the applicable statute of limitations had expired. In those counts, Franklin alleges that the hostile work environment created at Pepco, and the company's failure to reasonably accommodate her disability, violated her rights under the DCHRA. She also alleges that Pepco violated the DCFMLA by retaliating against her for availing herself of rights under that statute, first by giving her a negative review and then by wrongfully terminating her employment. Whether or not these claims are meritorious, the Court agrees with Pepco that it cannot address them because they were brought too late.

Individuals have a private right of action for violations of the DCHRA only if the suit is

commenced within one year of the discovery of the unlawful discriminatory act. D.C. Code § 2-1403.16. Franklin's complaint was not filed until November 16, 2011, more than 15 months after the last allegedly discriminatory act – her termination on July 20, 2010. Filing a Charge of Discrimination with the EEOC, which Franklin did in October 2010, does not toll the DCHRA statute of limitations. See Thompson v. Dist. of Columbia, 573 F. Supp. 2d 64, 67 (D.D.C. 2008). Hence, Counts III and IV of the complaint are time-barred and will be dismissed.

Similarly, individuals have the right to sue for violations of the DCFMLA only for one year after the alleged violation occurred. D.C. Code § 32-510(b); see Jackson v. Wilks Artis, 565 F. Supp. 2d 148, 152 (D.D.C. 2008). Again, the last act allegedly in violation of the DCFMLA occurred on July 20, 2010, and the Complaint was not filed until November 16, 2011. Franklin's claims under the DCFMLA are therefore foreclosed, and Pepco's motion to dismiss will be granted on Count VI as well.

### V. Claims Under the FMLA

Pepco argues that Franklin's claims of retaliation and wrongful termination under the FMLA must be dismissed, primarily because she has not alleged a causal connection between her protected activity under the FMLA and the adverse employment actions taken against her. Franklin, on the other hand, argues that the negative reviews of her job performance and her subsequent termination occurred as a result of her disability and filing for FMLA benefits. Compl. ¶¶ 66-68. The Court finds Franklin's argument more persuasive.

The FMLA forbids an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]," as well as from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(1), (a)(2); see also McFadden v.

Ballard Spahr Andrews & Ingersoll, LLP, 611 F.3d 1, 7 (D.C. Cir. 2010) (citing Ragsdale v. Wolverine Worldwide, Inc., 535 U.S. 81, 89 (2002) (discussing elements)). To state a claim for retaliation under the FMLA, a plaintiff must establish: "(1) that he engaged in a statutorily protected activity; (2) that the employer took adverse personnel action; and (3) that a causal connection existed between the two." 28 U.S.C. § 2615(a)(2); Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 651 (D.C. Cir. 2003) (quoting Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985)). All three of these elements can be reasonably inferred from the factual allegations made in Franklin's complaint. See Scheuer, 416 U.S. at 236.

As to the first factor, because Franklin applied for and was granted FMLA leave time, taking that leave constituted protected activity by her. See 29 U.S.C. § 2614(a) (stating that anyone who takes FMLA leave for its intended purpose shall be restored to the same or an equivalent position upon returning to work). With respect to the second factor, Franklin's eventual termination clearly constitutes an "adverse" action. See Baird v. Gotbaum, 662 F.3d 1246, 1248-49 (D.C. Cir. 2011). The third factor is the closest, but the Court finds that Franklin's allegation of a causal connection between the protected activity and the adverse action is plausible on its face. Rogers' review of Franklin's performance commented on Franklin's FMLA leave, as did the calendar of absences that Rogers created. See Compl. ¶¶ 22-23. Indeed, the mere fact that Rogers created the calendar of absences suggests that Franklin's leave – including protected leave – was closely scrutinized. Pepco claims that it terminated Franklin only because her doctor said she could not work in her current department and she was not hired in an alternative one. See Compl., Ex. 8. However, Pepco clearly misinterpreted the letter from Franklin's physician, which did not obligate a departmental transfer for Franklin but merely recommended it. See Compl. Ex. 6. That error, combined with the frequent scrutiny of

9

Franklin's FMLA and sick leaves, persuades the Court that Franklin's allegations are at least plausible.

Pepco asserts that the six-month gap between Franklin's protected activity and the adverse employment action – her termination – precludes demonstration of a causal connection between the two. However, the caselaw about temporal proximity applies when the plaintiff is relying only on that proximity to establish a connection. See, e.g., Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004) ("The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two.") (emphasis added). Here, by contrast, Franklin has additional evidence of causation. While a very long gap between the protected activity and the adverse action might defeat even independent evidence of causation, a gap of six months does not do so here.

Pepco also argues that since Franklin's complaint does not allege that she was an "eligible employee" entitled to FMLA benefits, she cannot now claim that Pepco acted in violation of her rights under the FMLA. It is true that an employee is entitled to the protections of the FMLA only if he or she is an "eligible employee" as defined in that statute. See 29 U.S.C. § 2614(a). The FMLA defines an eligible employee as one "who has been employed (i) for at least 12 months by the employer . . . (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2). Although Franklin did not formally allege that she met those requirements in her complaint, she did allege (and Pepco did not contradict) that she had already been awarded FMLA benefits. Hence, it is reasonable to infer that she indeed qualified as an "eligible employee" under the Act. See Compl. ¶ 20; Pl.'s Opp'n at 4-5; compare Ghawanmeh v. Islamic Saudi Acad., 672 F. Supp. 2d 3, 14-15 (D.D.C. 2009) (granting a motion to dismiss because the complaint had no factual allegations to support plaintiff's qualifying as an

10

"eligible employee" and the employee had been denied FMLA leave). Accordingly, the Court will not dismiss this claim.

### VI. Defamation Claim

Finally, Franklin seeks damages for alleged defamation. She claims Pepco's repeated assertion that she had to reimburse it for tuition payments made on her behalf was a knowingly false statement that hurt her reputation on being published to a debt collector. Compl. ¶¶ 76-79. Pepco argues that the statement does not meet the requirements for a claim of defamation. Def.'s MTD at 15-16.

District of Columbia courts have held that a defamation claim survives a Rule 12(b)(6) motion to dismiss only if "the contested statements are both verifiable and reasonably capable of defamatory meaning." Weyrich v. New Republic, Inc., 235 F.3d 617, 620 (D.C. Cir. 2001); see also Klayman v. Segal, 783 A.2d 607, 612 (D.C. 2001). Whether a statement is reasonably capable of defamatory meaning is a question of law. Jankovic v. Int'l Crisis Group, 494 F.3d 1080, 1091 (D.C. Cir. 2007) (internal citation omitted). In order to state a claim for defamation, a plaintiff must allege "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." Jankovic, 494 F.3d at 1088. Franklin fails at least the first and fourth prongs of this test; therefore, she fails to state a sufficient claim to withstand the motion to dismiss on this count.

"[A] statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." Jankovic, 494 F.3d at

11

1091 (quoting Moss v. Stockard, 580 A.2d 1011, 1023 (D.C. 1990)).  The statement "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." Jankovic, 494 F.3d at 1091 (citation omitted).  Even assuming arguendo that Pepco's statement of Franklin's debt is false, it does not rise to the level of a comment on her character that could make her appear "odious, infamous or ridiculous." Id.; see also Benic v. Reuters Am., Inc., 357 F. Supp. 2d 216, 222 n.4 (D.D.C. 2004) (in the context of a defamation claim, "believing that an individual did something wrong is distinct from thinking that the individual was odious, infamous, or ridiculous").  For instance, the Jankovic court found that a statement was defamatory where it "could lead a reasonable reader to conclude" that the plaintiff was "actively in alliance" with an international leader who had committed "war crimes and ethnic cleansing." 494 F.3d at 1080.  Pepco's statement, by contrast, was only that Franklin owed it some amount of money after her employment was terminated.  This may be an "unpleasant or offensive" statement, but it does not portray Franklin as "odious, infamous, or ridiculous."[2]

      Franklin's complaint also shows neither that Pepco's statement is actionable as a matter of law irrespective of special harm ("per se"), nor that it makes out a special harm. A statement is defamatory as a matter of law ("defamatory per se") if it is so likely to cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation. Carey v. Piphus, 435 U.S. 247, 262 (1978).  Defamation as a matter of law generally consists of false statements that impute to the subject a crime, a repugnant disease, a matter adversely affecting the person's ability to work in a profession, or gross sexual misconduct.  Carey, 435 U.S. at 262

---

[2] A statement's characterization as defamatory also depends in part on the receiving party and the context. See, e.g., Washington v. Lavoie, 357 F. Supp. 2d 210, 215-16 (D.D.C. 2004). Pepco's sending the purported debt to a collection agency, which routinely handles such claims, is unlikely to impact Franklin in the way sending it to her friends or business partners might.

n.18 (citing Restatement (Second) of Torts §§ 558-59, 569-74 (1977)). The only general allegation Franklin makes regarding the effect of Pepco's statement on her is that it has hurt her reputation, Compl. ¶¶ 43, 79, which is insufficient to render it defamatory per se.

The statement to the debt collector also does not seem to have caused Franklin "special harm," which is "limited to actual pecuniary loss." FAA v. Cooper, 132 S. Ct. 1441, 1451 (2012) (citing 3 Restatement of Torts § 575, Comments a and b (1938)). It allegedly causes Franklin to "risk[]" having her credit suffer, but she does not say that this harm has actually occurred, or that she has sustained any pecuniary loss as a result of the "risk." Compl. ¶ 43. Furthermore, a plaintiff bringing a defamation claim must specifically "plead the time, place, content, speaker, and listener of the alleged defamatory matter." Stovell v. James, 810 F. Supp. 2d 237, 248 (D.D.C. 2011). Franklin alleges only that Pepco sent the amount of her debt to "a collection agency," without specifying which agency or when and where the statement was made. Compl. ¶¶ 42, 76, 78.

The Court will therefore grant Pepco's motion to dismiss as to Count VII[3] of Franklin's complaint.

## Conclusion

For the foregoing reasons, the Court will grant defendant's motion to dismiss as to Counts I, II, III, IV, VI, and VII of plaintiff's complaint, and deny the motion to dismiss as to Count V of plaintiff's complaint. A separate order will accompany this opinion.

---

[3] "Count VII" refers to the last count of the complaint, which is cited as the second "Count VI" in the document.

/s/
JOHN D. BATES
United States District Judge

Dated: July 13, 2012